IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRIAN BRANCH, as Guardian Ad Litem for
Cynthia N., Charles N. and Christina N.,
minor children, and KENNETH MARTINEZ,
as Guardian Ad Litem for James R., Diana R.
and Michael R., minor children,                             Civ. No. 01-922 MV/WWD ACE

        Plaintiffs,

vs.

FARMERS INSURANCE CO. OF
ARIZONA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment on the Duty to Defend and the Duty to Indemnify, filed March 6, 2002, **[Doc. No. 47]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED.**

### BACKGROUND

This case arises from the alleged breach of a homeowners policy issued by Defendant Farmers Insurance Company of Arizona ("Farmers") to Marilyn and Gene Anderson (the "Andersons"). The Andersons' home was licensed by the State of New Mexico, Children, Youth and Families Department ("CYFD") as a family foster home. Pursuant to the license, Cynthia N., Charles N. and Christina N. (the "N" children) were placed for foster care in the Anderson home

from March 11, 1994 to June 3, 1995. James R., Diana R. and Michael R. (the "R" children) were placed for foster care in the Anderson's home from June 9, 1993 to August 31, 1995.

In 1997, the "N" children and the "R" children, through their guardians ad litem, filed two civil actions in the United States District Court for the District of New Mexico against multiple defendants, including Gene and Marilyn Anderson (the "N" litigation and the "R" litigation). The complaints in both cases alleged that the "N" and "R" children were physically, sexually, and emotionally abused by Richard Anderson, an adult son of the Andersons, while in the Andersons' home and that the Andersons negligently failed to protect the children from harm. The complaint in the "R" litigation also alleged that Marilyn Anderson physically abused James R.

At all relevant times, the Andersons' home was covered under a Farmers homeowners policy issued to Gene and Marilyn Anderson (the "policy"). The policy contains a provision, commonly referred to as a household exclusion, that provides:

We do not cover:

\* \* \*

6. Bodily injury to any resident of the residence premises except a residence employee who is not covered under Workers' Compensation or Employers' Liability Coverage.

\* \* \*

11. Personal injury to any resident of the residence premises.

(internal emphasis omitted). The term "resident" is undefined.

The policy also contains an endorsement that excludes coverage for molestation of a child:

We do not cover actual or alleged injury or medical expenses caused by or arising out of the actual, alleged, or threatened molestation of a child by:

    1.    any insured; or
    2.    any employee of any insured; or

> 3. any volunteer, person for hire, or any other person who is acting or who appears to be acting on behalf of any insured.
>
> Molestation includes but is not limited to any act of sexual misconduct, sexual molestation or physical or mental abuse of a minor.
>
> We have no duty to defend or settle any molestation claim or suit against any insured, employee of any insured, or any other person.

(internal emphasis omitted).

An insured is defined, in relevant part, as the persons named in the Declarations (i.e., Gene and Marilyn Anderson) and "the following persons if permanent residents of your household: a. your relatives; b. anyone under the age of 21."

Farmers, at least initially, provided a defense to the Andersons under a reservation of rights in the "N" litigation. Farmers subsequently informed the Andersons that its investigation revealed that the claims against the Andersons in the "N" litigation and the "R" litigation were not covered under the policy. On or about July 15, 1998, the parties in the "N" and "R" litigation reached an agreement in principle to resolve all claims against the Andersons. As a part of the settlement, the Andersons assigned their purported claims against Farmers to the "N" and "R" children. The settlements in the "N" and "R" litigation were approved by this Court on September 10, 1998.

On July 5, 2001, the "N" and "R" children, through their guardians ad litem, brought this action against Farmers alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Insurance Code and the Unfair Practices Act. The "N" and "R" children are represented in this action by the same attorneys who represented them in the underlying cases.

Farmers filed the instant motion seeking summary judgment on all claims. In its motion, Farmers asserts that the undisputed facts reveal that it had no duty to defend or indemnify the Andersons in the underlying litigation because (1) the "N" and "R" children were residents of the Anderson home during the relevant time and therefore the policy exclusion for injury to a resident of the resident premises applies and/or (2) that Richard Anderson was a resident of the Anderson home during the relevant time period and therefore the molestation exclusion bars coverage. Farmers also asserts that it is entitled to summary judgment on the remaining claims because Plaintiffs' extra-contractual claims for common law bad faith, violation of the Unfair Practices Act, and violation of the Unfair Insurance Practices Act, cannot survive a determination by the Court that Farmers did not have a duty to defend or to indemnify the Andersons.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.

1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

In a diversity action, the Court applies the substantive law of the forum state. *See Novell, Inc. v. Federal Ins. Co*., 141 F.3d 983, 985 (10th Cir. 1998). Under New Mexico law, "[t]he duty of an insurer to defend arises from the allegations on the face of the complaint or from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage." *American Gen. Fire & Cas. Co. v. Progressive Cas. Co*., 799 P.2d 1113, 1116 (N.M.1990). Any doubt about whether the allegations are within the policy coverage are resolved in the insured's favor. *See Collier v. Union Indem. Co*., 31 P.2d 697 (N.M.1934). If there is a question regarding coverage, the insurer must tender a defense until relieved of this duty

by the court in which the action is proceeding. *See Lopez v. N.M. Sch. Ins. Auth.*, 870 P.2d 745, 748 (N.M.1994); *Found. Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 606 (N.M. 1982).

An insurer who breaches the duty to defend is liable not only for defense costs, but also for indemnification of the insured, even if such liability would otherwise have been excluded by the policy. *See Valley Improvement Ass'n v. United States Fid. & Guar. Corp.*, 129 F.3d 1108, 1125-26 (10th Cir. 1997) (holding that an insurer who unjustifiably fails to defend is liable for the resulting judgment or any settlement entered into by the insured in good faith, regardless of any coverage defenses); *American Gen. Fire & Cas. Co.*, 799 P.2d at 1117 ("An insurer suffers serious consequences upon its unjustified failure to defend after demand, including . . . liability for a judgment entered against the insured or good faith settlement agreed to by the insured.").

In interpreting the provisions of an insurance policy, the district court is guided by general principles of contract law. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 945 P.2d 970, 976 ("[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts." (internal quotation marks and citations omitted). "Under New Mexico law the obligation of a liability insurer is contractual and is to be determined by the terms of the policy." *Safeco Ins. Co. of Am., Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977). If a policy is clear and unambiguous, the court does not construe the terms; rather, it merely gives the terms their usual and ordinary meaning. *See W. Commerce Bank v. Reliance Ins. Co.*, 732 P.2d 873, 875 (N.M. 1987); *Ivy Nelson Grain Co. v. Commercial Union Ins. Co.*, 453 P.2d 587, 589 (N.M.1969). A contract may be ambiguous if the meanings of terms are not obvious, or if the contract is "reasonably and fairly susceptible of different constructions." *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999-NMSC-006, ¶ 27, 976 P.2d 1, 12 (1998).

If an ambiguity exists in an insurance contract, the court must determine what a reasonable person in the insured's position would have understood the term to mean. *See Phoenix Indem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 23, P.3d 639, 646 (2000). Contracts are construed liberally in favor of the insured and exclusion clauses in insurance policies are narrowly construed. In construing the terms of the policy, the court may use all available extrinsic evidence to interpret ambiguities, including "the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." *Mark V. Inc. v. Mellekas*, 845 P.2d 1232, 1236 (N.M. 1993).

### A.     The Household Exclusion

Farmers asserts that the undisputed facts demonstrate that the "N" and "R" children were residents of the Anderson household and therefore the household exclusion precludes coverage for injury to the children. The New Mexico Court of Appeals recently considered whether a foster child is a "resident" of a foster home for the purposes of an identical household exclusion in a Farmers homeowner's insurance policy. *Risk Mgmt. Div. of the Gen. Servs. Dep't of the State of N.M. v. Farmers Ins. Co. of Ariz.*, 2003-NMCA-095, 75 P.3d 404. After applying contract interpretation principles and surveying caselaw from other jurisdictions, the court found that "the undefined term, 'resident' or 'residence' may be subject to various interpretations depending on the context of the case." *Id.* at ¶ 10, 407. After finding the term ambiguous, the court proceeded to construe the contract language, and "adopt the interpretation that is most in accord with reason and the probable expectations of the parties." *Id.* at ¶ 11, 407 (citing *Rummel*, 1997-NMSC-041, 945 P.2d 970). The court ultimately concluded that additional information was needed to construe the contract language and remanded the case for further factual development. To

determine whether a foster child is a "resident" for purposes of the homeowner's insurance policy, the court instructed the trial court to consider 1) the intent of the parties to the insurance contract and 2) the nature of the child's stay in the foster home, including both the State's objective intention for the child's stay and the subjective relationship between the child and foster parents. *Id.* at ¶¶ 15-19, 409-410.

In determining the State's intent, the *Risk Management* Court suggested that the following information be considered: CYFD documentation concerning the designation of the child's placement prior to the injury; any dates proposed for moving the child from the foster home prior to the injury; any pending assessments or other evaluations by CYFD that might bear on the child's continued placement in the foster home; any order pending prior to the injury that might affect the child's placement; and the duration of the child's actual stay in the home. *Id.* In determining the nature of the foster child/foster parent relationship, the *Risk Management* Court stated that a court should consider whether the relationship was informal, close, and intimate, suggesting that the child may be a resident. *Id.*

While some of the information the Court is required to consider under the factors set forth in *Risk Management* is in the record before the Court, much of it is not. For example, no evidence has been provided regarding the intent of the parties when entering into the insurance contract or the nature of the relationship between the foster children and the Andersons. As all the material facts are not before the Court, summary judgment on whether the "R" and "N" children were "residents" of the Anderson house for purposes of the household exclusion is inappropriate.

### B. Sexual Molestation Exclusion

Farmers also contends that the undisputed facts demonstrate that Richard Anderson was a "permanent resident" of the Anderson home for purposes of application of the sexual molestation exclusion. The sexual molestation exclusion excludes coverage for the "actual, alleged, or threatened molestation of a child by any insured." An insured is defined, in relevant part, as the persons named in the Declarations (*i.e.,* Gene and Marilyn Anderson) and "your relatives" "if permanent residents of your household." In the underlying actions, plaintiffs asserted claims of emotional, physical and sexual abuse by Richard Anderson and claims of physical abuse by Marilyn Anderson. It is undisputed that Marilyn Anderson is an insured under the policy and therefore the molestation exclusion bars coverage for claims of any actual or alleged physical abuse of a child by Marilyn Anderson. Whether this exclusion applies to bar coverage for claims of molestation by Richard Anderson depends on whether Richard Anderson is a "permanent resident" of the Anderson home.

The New Mexico Appellate Court's determination that the terms "resident" and "residence" as used in the Farmers homeowners policy are ambiguous is not limited to the household exclusion clause. Consequently, this term must also be construed for purposes of the sexual molestation exclusion. The Court finds that the general factors for construing the term "resident" set forth in *Risk Management* apply. In order to determine if Richard Anderson is a "permanent resident" of the Anderson household the Court must consider 1) the intent of the parties to the insurance contract and 2) the nature of Richard Anderson's stay at the Anderson home. While there is some evidence in the record regarding the nature of Richard Anderson's stay at the Anderson home, the Court has not been provided any evidence regarding the intent of the parties to the insurance contract. Consequently, summary judgment on this issue is not

appropriate at this time.

### C. Farmers' Conduct

Farmers seeks summary judgment on the remaining counts in Plaintiffs' complaint on the grounds that resolution of whether Farmers had a duty to defend and/or indemnify the Andersons is dispositive of the Plaintiffs' extra-contractual claims for common law bad faith, violation of the Unfair Practices Act, and violation of the Unfair Insurance Practices Act. As the Court cannot determine from the undisputed material facts currently before it whether Farmers owed a duty to defend or indemnify the Andersons, the Court must deny Farmers' motion for summary judgment on the extra-contractual claims.

### D. Judicial Estoppel

Farmers also argues that judicial estoppel precludes Plaintiffs from disputing that the "R" children and the "N" children were "residents" of the Anderson home and that Richard Anderson was a "permanent resident" of the Anderson's home for purposes of the insurance policy because Plaintiffs repeatedly asserted in the underlying claims that Richard Anderson and the children "resided" at or were "residents" of the Anderson home. Farmers' judicial estoppel argument fails on a number of grounds.

Although judicial estoppel is "probably not reducible to any general formulation of principle," the United States Supreme Court has found that the following factors typically inform the application of this doctrine: (1) "a party's later position must be clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the

party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001).

First, as part of the settlement between Plaintiffs and the Andersons in the underlying action, the Andersons assigned their cause of action against Farmers to Plaintiffs. Plaintiffs are now pursuing the Andersons' rights against Farmers and thus stand in the shoes of the Andersons. *See* Holmes' Appleman on Insurance 2d § 136.8 (C) ("The assignee stands in the shoes of the insured and so may assert any rights that the insured had as a result of the insurer's refusal to defend . . . and is vulnerable to any defenses that the insurer would have been able to assert against the insured."). Farmers may not assert defenses against the Plaintiffs, as assignees of the rights of the Andersons, that they could not assert directly against the Andersons.

The Andersons are not bound by any assertions Plaintiffs made regarding the residency of the children or Richard Anderson in the claims brought in the underlying action. Consequently, Plaintiffs, who now stand in the shoes of the Andersons, are not bound by the assertions made by Plaintiffs in the underlying action. To hold otherwise, would permit Farmers to derive an unfair advantage from the assignment of the Andersons' rights to Plaintiffs.

Second, even if judicial estoppel did apply in this situation, Plaintiffs' current position is not "clearly inconsistent with its earlier position." *New Hampshire v. Maine*, 532 U.S. at 750-751. Farmers argues that because Plaintiffs contended in the underlying action that the "N" and "R" children "resided" in the Anderson household at all relevant times and were "residents" of the Anderson household and asserted that Richard Anderson was a "resident" of the Anderson household, Plaintiffs are now judicially estopped from disputing that the "N" and "R" children

-11-

were residents of the Anderson household and that Richard Anderson was a resident of the Anderson household.  The New Mexico Court of Appeals has found the undefined terms "resident" and "residence," as used in the Farmers policy, to be ambiguous.  The Court will not impose judicial estoppel based upon a party's use of an ambiguous term.

Third, even if judicial estoppel applied under these circumstances, Plaintiffs and the Andersons settled the underlying claims without reference to the residence of the children and Richard Anderson and therefore did not persuade this Court to accept any position regarding the residency of the children or Richard Anderson.

## CONCLUSION

While the interpretation of the terms of an insurance policy, like any other contract, is a question of law, the relevant terms used in the insurance policy at issue have been found to be ambiguous by the New Mexico Court of Appeals.  Several facts necessary to construe these ambiguous terms and determine the reasonable expectations of the insured are not before the Court.  Consequently, summary judgment is not appropriate at this time.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment on the Duty to Defend and the Duty to Indemnify, filed March 6, 2002, **[Doc. No. 47]** is hereby **DENIED** in its entirety.

Dated this 26th day of January, 2004.

                                                     _____
                                                     MARTHA VÁZQUEZ
                                                     U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiffs:
    Maureen A. Sanders, Esq.
    F. Michael Hart, Esq.
    Philip B. Davis, Esq.

Attorneys for Defendant:
    William C. Madison, Esq.
    Shannon A. Parden, Esq.