IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRIAN BRANCH, as Guardian Ad Litem for
Cynthia N., Charles N. and Christina N.,
minor children, and KENNETH MARTINEZ,
as Guardian Ad Litem for James R., Diana R.
and Michael R., minor children,   Civ. No. 01-922 MV/WWD ACE

        Plaintiffs,

vs.

FARMERS INSURANCE CO. OF
ARIZONA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Farmers' Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages, filed May 7, 2002, **[Doc. No. 87]** and Defendant Farmers' Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages in Regards to the "R" Litigation, **[Doc. No. 90]**. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that the motions are well-taken and will be **GRANTED**.

### BACKGROUND

This case arises from the alleged breach of a homeowners policy issued by Defendant Farmers Insurance Company of Arizona ("Farmers") to Marilyn and Gene Anderson (the "Andersons"). The Andersons' home was licensed by the State of New Mexico, Children, Youth

and Families Department as a family foster home. In 1997, two groups of foster children, through their guardians *ad litem*, filed separate civil actions in the United States District Court for the District of New Mexico against multiple defendants, including Gene and Marilyn Anderson (the "N" litigation and the "R" litigation). The complaints in both cases alleged that the children were physically, sexually, and emotionally abused by Richard Anderson, an adult son of the Andersons, while in the Andersons' home and that Marilyn and Gene Anderson negligently failed to protect the children from harm. The complaint in the "R" litigation also alleged that Marilyn Anderson physically abused one of the children. The New Mexico Risk Management Division retained counsel to represent the Andersons ("RMD counsel") in the "N" and "R" litigation.

At all relevant times, the Andersons' home was covered under a Farmers homeowners policy issued to Gene and Marilyn Anderson (the "policy"). The policy provides that Farmers "will pay those damages which an insured becomes legally obligated to pay because of bodily injury . . . resulting from an occurrence to which this coverage applies." "Bodily injury" is defined as "bodily harm, sickness or disease, including care, loss of services and death resulting from that injury." An occurrence is defined as " . . . an accident including exposure to conditions which result during the policy period in bodily injury or property damage."

The policy contains a provision, commonly referred to as a household exclusion, that

provides:

> We do not cover:
>
> * * *
>
> 6. Bodily injury to any resident of the residence premises except a residence employee who is not covered under Workers' Compensation or Employers' Liability Coverage.

(internal emphasis omitted). The term "resident" is undefined.

> The policy also contains an endorsement that excludes coverage for molestation of a child:
>
> We do not cover actual or alleged injury or medical expenses caused by or arising out of the actual, alleged, or threatened molestation of a child by:
>
> 1. any insured; or
> 2. any employee of any insured; or
> 3. any volunteer, person for hire, or any other person who is acting or who appears to be acting on behalf of any insured.
>
> Molestation includes but is not limited to any act of sexual misconduct, sexual molestation or physical or mental abuse of a minor.
>
> We have no duty to defend or settle any molestation claim or suit against any insured, employee of any insured, or any other person.

(internal emphasis omitted).

An insured is defined, in relevant part, as the persons named in the Declarations (*i.e.,* Gene and Marilyn Anderson) and "the following persons if permanent residents of your household: a. your relatives; b. anyone under the age of 21."

On July 30, 1997, plaintiffs' attorney sent a letter to Dan DeMar, the Andersons' Farmers agent, requesting a copy of the Andersons' homeowners policy and the policy limits for personal liability coverage. On March 3, 1998, RMD counsel wrote a letter to Dan DeMar, stating that he represented the Andersons and requesting a copy of the Andersons' homeowners policy. On

March 11, 1998, RMD counsel reiterated his request for a copy of any policy "covering the personal liability of Marilyn and Gene Anderson." Farmers provided a printout of the declaration pages of all policies the Andersons had with Farmers. On March 17, 1998, RMD counsel requested a copy of the entire insurance contract for each policy the Andersons had with Farmers. None of these letters referenced the pending litigation although several of the letters were copied to numerous attorneys.

On March 30, 1998, plaintiffs' counsel sent a letter to Dan DeMar attaching a copy of the First Amended Complaint in the "N" litigation. In this letter, plaintiffs' counsel indicated that the New Mexico Risk Management Division had retained counsel to represent Marilyn and Gene Anderson but that Richard Anderson was unrepresented. Plaintiffs' counsel stated that "[i]t occurs to me that Farmer's [sic] owes all the Andersons a duty to defend and indemnify for the allegations in the complaint."

On April 3, 1998, a Farmers adjuster spoke to plaintiffs' attorney about the "N" litigation. On April 15, 1998, Farmers sent a letter to the Andersons advising them to hire their own counsel to answer the "N" lawsuit while Farmers conducted a coverage investigation. In this letter, Farmers discussed provisions of the policy that might preclude coverage for the "N" litigation and reserved its rights. Farmers indicated that if it determined there was coverage, Farmers would reimburse the Andersons its share of reasonable and necessary legal fees.

On April 15, 1998, Farmers' branch office in Albuquerque requested authority to deny a defense and indemnity from Farmers' Phoenix office. On April 30, 1998, the Phoenix office advised the Albuquerque office to obtain a coverage opinion from counsel. On May 1, 1998, Farmers requested a coverage opinion in the "N" litigation from coverage counsel.

On May 13, 1998, Farmers sent a letter to the Andersons that included the child molestation exclusion as a potential basis for excluding coverage for the "N" litigation. On June 1, 1998, coverage counsel provided a coverage opinion to Farmers, opining that the policy did not cover the allegations in the "N" complaint and that there was no duty to defend the Andersons in the "N" litigation. Coverage counsel's opinion was based solely on a review of the Second Amended Complaint in the "N" litigation and the policy. Coverage counsel recommended that Farmers bring a declaratory judgment action in the "N" litigation to have the court declare if there was coverage or a duty to defend under the policy and suggested that it would be prudent for Farmers to extend a defense under a reservation of rights until the court could determine the issue of coverage.

On June 3, 1998, Farmers sent a letter to the Andersons stating that Farmers would provide a defense in the "N" litigation under a reservation of rights. On June 9, 1998, Farmers retained counsel to defend the Andersons ("Farmers defense counsel") in the "N" litigation.[1] On June 17, 1998, Farmers defense counsel had a conversation with plaintiffs' counsel during which plaintiffs' counsel mentioned the "R" litigation. This appears to be the first time Farmers defense counsel became aware of the "R" litigation. Plaintiffs' attorney sent a letter to Farmers defense counsel enclosing a copy of the "R" complaint on July 1, 1998.

On July 2, 1998, Farmers sought authority from its corporate headquarters to file a declaratory action regarding coverage under the policy for the "N" litigation. The memo sent to corporate headquarters notes that several coverage questions exist, including whether Richard

---

[1] Farmers initially tendered the defense of the Andersons to a law firm on June 3, 1999. Due to a conflict, the case was referred to a second law firm.

Anderson was a permanent resident of the Andersons' home and whether the foster children were residents of the Andersons' home for purposes of the policy. On July 8, 1998, the Phoenix office granted the Albuquerque office authority to deny defense and indemnity in the "N" litigation.

On July 1, 1998, Farmers defense counsel entered an appearance in the "N" litigation.[2] On July 8, 1998, Farmers defense counsel sent a letter to the Andersons informing them that they had been retained by Farmers to represent the Andersons in the "N" litigation. The letter stated that Farmers defense counsel would be contacting the Andersons shortly to discuss the case and invited the Andersons to call with any questions.

On July 8, 1998, O'Brien sent a letter to Farmers informing them of the "R" litigation and seeking authority to enter an appearance on behalf of the Andersons in the "R" litigation. On July 9, 1998, Farmers sent a letter to the Andersons indicating that their investigation had revealed that there was no coverage for the "N" litigation and that Farmers would be withdrawing their defense as of August 7, 1998. The letter requested that the Andersons provide any amended complaints or any additional information to Farmers for its consideration. On July 13, 1998, Farmers informed RMD counsel that they had determined that there was no coverage for the "N" and "R" litigation and that Farmers would be withdrawing their defense on August 7, 1998. On July 15, 1998, Farmers defense counsel informed RMD counsel that Farmers had determined that there was no coverage for the "N" litigation and that Farmers would withdraw its defense of the Andersons as of August 7, 1998. Farmers defense counsel offered to assist RMD counsel with whatever needed to be done in regards to the defense of the Andersons in the "N" litigation

---

[2] This notice was amended on July 9, 1998, to clarify that Farmers defense counsel would be co-counsel on behalf of the Andersons along with RMD counsel.

between July 15, 1998 and August 7, 1998.

On July 15, 1998, a court-ordered settlement conference was held before a magistrate judge. Farmers defense counsel, Farmers coverage counsel and a Farmers representative attended the settlement conference but left after informing the judge that Farmers did not believe there was any coverage under the policy and would not be contributing to a settlement in the matter. RMD counsel was present during the settlement conference.

On or about July 15, 1998, the parties in the "N" and "R" litigation reached an agreement in principle to resolve all claims against the Andersons. As a part of the settlement, the Andersons assigned their purported claims against Farmers to the "N" and "R" children. Farmers subsequently decided to continue defending the Andersons in the "N" litigation until the hearing on the proposed settlement was held. The settlements in the "N" and "R" litigation were approved by this Court on September 10, 1998.

On July 31, 1998, Farmers' Phoenix office declined permission to file a declaratory action in the "N" litigation. On September 28, 1998, coverage counsel for Farmers provided a coverage opinion on the "R" litigation, reaching the same conclusion as on the "N" litigation.

On July 5, 2001, the "N" and "R" children, through their guardians *ad litem*, brought this action against Farmers alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Insurance Code and the Unfair Practices Act. In their complaint, Plaintiffs seek punitive damages.

Farmers filed two motions seeking summary judgment on Plaintiffs' claims for punitive damages. In its motions, Farmers asserts that the undisputed material facts contain no evidence that Farmers had a culpable mental state in regards to any of its action concerning the Andersons

in the underlying "N" and "R" litigation and punitive damages are improper as a matter of law. Plaintiffs contend that Farmers' handling and investigation of the underlying claims, its inadequate defense of the Andersons in the "N" litigation, and its complete failure to provide a defense to the Andersons in the "R" litigation support an award of punitive damages.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond

the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248.  Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

### DISCUSSION

In a diversity action, the Court applies the substantive law of the forum state. *See Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 985 (10th Cir. 1998).  Under New Mexico law, "[t]he duty of an insurer to defend arises from the allegations on the face of the complaint or from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage." *American Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (N.M.1990).  Any doubt about whether the allegations are within the policy coverage are resolved in the insured's favor. *See Collier v. Union Indem. Co.*, 31 P.2d 697 (N.M.1934).  If there is a question regarding coverage, the insurer must tender a defense until relieved of this duty by the court in which the action is proceeding. *See Lopez v. N.M. Sch. Ins. Auth.*, 870 P.2d 745, 748 (N.M.1994); *Found. Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 606 (N.M. 1982).

An insurer who breaches the duty to defend is liable not only for defense costs, but also for indemnification of the insured, even if such liability would otherwise have been excluded by the policy. *See Valley Improvement Ass'n v. United States Fid. & Guar. Corp.*, 129 F.3d 1108, 1125-26 (10th Cir. 1997) (holding that an insurer who unjustifiably fails to defend is liable for the

resulting judgment or any settlement entered into by the insured in good faith, regardless of any coverage defenses); *American Gen. Fire & Cas. Co.*, 799 P.2d at 1117 ("An insurer suffers serious consequences upon its unjustified failure to defend after demand, including . . . liability for a judgment entered against the insured or good faith settlement agreed to by the insured.").

An award of punitive damages in a breach of contract case must be predicated, at a minimum, upon a showing of bad faith.[3]  *See, e.g.*, *Allsup's Convenience Stores, Inc. v. North River Ins. Co.,* 1999-NMSC-006, ¶ 45, 976 P.2d 1, 16-17 (1998); *Paiz v. State Farm Fire and Cas. Co.*, 880 P.2d 300, 307-308 (N.M. 1994) (overruling previous line of cases which suggested that in cases involving breach of insurance contracts, punitive damages may be predicated solely upon gross negligence).  An insurer's incorrect decision regarding coverage, without more, is not enough to establish bad faith.  *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 709 P.2d 649 (N.M. 1985) (reversing bad faith finding when, although insurer wrongly withheld payment, there were legitimate reasons to question amount of damages).  To show bad faith, there must be no reasonable basis for denying the claim.  *Id.* at 654.

---

[3] It is unclear if under New Mexico law the imposition of punitive damages requires the presence of aggravated conduct beyond that necessary to establish bad faith.  This question has been certified to the New Mexico Supreme Court by the Tenth Circuit.  *See Sloan v. State Farm Mut. Auto. Ins. Co*., 320 F.3d 1073 (2003).  Resolution of this issue is unnecessary for the instant motion, however, because the Court finds that the undisputed material facts do not demonstrate bad faith as a matter of law.

The New Mexico Supreme Court has stated:

> [T]he assessment of punitive damages for breach of an insurance policy requires evidence of bad faith or malice in the insurer's refusal to pay a claim.  "Bad faith" has been defined as "any frivolous or *unfounded* refusal to pay."  "Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer *utterly* fails to exercise care for the interests of the insured in denying or delaying payment on an insurance policy.  It means an utter or total lack of foundation for an assertion of nonliability--an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim.  It is synonymous with the word with which it is coupled:  "frivolous."

*Jackson Nat'l Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992) (emphasis in original) (internal cites and quotes omitted).  Summary judgment is warranted on a bad faith claim when the insurer has a reasonable basis for its coverage decision.  *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993).

One of the coverage issues raised in this case--whether foster children are "residents" of a foster home--is a matter of first impression in New Mexico.  Farmers, on the advice of counsel, predicted, based on case law from other jurisdictions, that New Mexico courts would hold that foster children are "residents" of a foster home.  If the "N" and "R" children were "residents" of the Anderson home, there would be no coverage for the claims of bodily injury to the children.  Regardless of whether Farmers' position is ultimately determined to be correct or incorrect, it was not "frivolous" or "unfounded" as those terms are defined by the New Mexico Supreme Court.  *See, e.g., TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1496 (10th Cir. 1995) (affirming summary judgment in favor of insurer on bad faith claim because the law was unsettled, and authority from other jurisdictions supported insurer's position); *Suggs v. State Farm Fire & Cas. Co.*, 833 F.2d 883, 890-91 (10th Cir. 1987) (reversing denial of insurer's motion for judgment as

a matter of law when insurer had a good faith basis for withholding payment). Because the Court finds that Farmers' denial of coverage based on the "household exclusion" is not unfounded or frivolous, the Court will not discuss the other provisions cited by Farmers for its denial of defense and indemnity.

Plaintiffs rely, in part, upon Farmers' failure to investigate the facts surrounding the underlying claims to show bad faith. New Mexico law, however, does not require an insurer to conduct an independent investigation into the underlying facts in a third-party insurance case. *See Valley Improvement Assoc.*, 129 F.3d at 1121-23 (holding New Mexico law does not impose a duty to investigate in third-party claims). Instead, Farmers' duty to defend must be determined by comparing the complaint to the policy, without regard to what an independent investigation would show. *See id.; Mullenix*, 642 P.2d at 606 (holding duty to defend arose from ambiguous allegations in complaint even though insurer's investigation revealed there was no coverage). Consequently, Farmers' failure to conduct an independent investigation into the facts does not provide any basis for a finding of bad faith.

Next, Plaintiffs contend that punitive damages are warranted, in part, by the inadequate defense Farmers provided to the Andersons in the "N" litigation. Plaintiffs assert that Farmers' defense of the Andersons was inadequate because (1) Farmers did not provide any defense in the "N" litigation from April to June 1998 while it investigated coverage; (2) Farmers defense counsel did not contact the Andersons; and (3) Farmers "abandoned" the Andersons at the July 15, 1998 settlement conference. None of these facts support a finding of bad faith.

On April 15, 1998, approximately two weeks after receiving a copy of the "N" complaint, Farmers sent a letter to the Andersons advising them to hire their own counsel to answer the

lawsuit while Farmers conducted a coverage investigation. Farmers indicated that if they determined there was coverage, Farmers would reimburse the Andersons for their share of reasonable and necessary legal fees. During this period, the Andersons continued to be represented by RMD counsel. Under these circumstances, it was not unreasonable for Farmers to spend a brief period of time investigating coverage prior to determining if it would provide a defense.

Plaintiffs' assertion that the defense provided by Farmers was inadequate because Farmers defense counsel never contacted the Andersons is contradicted by undisputed evidence in the record that on July 8, 1998, Farmers defense counsel wrote a letter to the Andersons regarding the case. Furthermore, Farmers defense counsel spoke with RMD counsel regarding the defense of the Andersons and offered to assist RMD counsel with any defense-related tasks. The fact that Farmers defense counsel did not stay for the entire settlement conference, which was held after Farmers determined that there was no coverage for defense or indemnity in the "N" litigation, does not constitute bad faith, particularly when the Andersons were represented at the settlement conference by RMD counsel.

Next, Plaintiffs contend that Farmers' failure to provide a defense in the "R" litigation is evidence of bad faith. Farmers asserts that it first learned of the "R" litigation on July 8, 1998. Plaintiffs have come forward with no evidence contradicting this assertion. The "R" litigation was settled on July 15, 1998. Farmers' alleged failure to provide a defense in the "R" litigation for the one-week period between the time it learned of the case and the date the case settled, does not support a finding of bad faith.

Finally, Plaintiffs point to a number of other perceived deficiencies in Farmers' conduct

that they believe support punitive damages, including Farmers' failure to promptly provide copies of the Andersons' homeowners policy to attorneys for the Plaintiffs and the Andersons, the different policy provisions quoted by Farmers in letters to the Andersons and their counsel, and Farmers failure to accurately advise the Andersons as to the policy provisions and the basis for Farmers' finding of no coverage.  The Court, construing the facts in the light most favorable to the Plaintiffs, finds that these perceived deficiencies, when considered in conjunction with the other deficiencies alleged by Plaintiffs, do not support a finding of bad faith.

The evidence before the Court demonstrates that Farmers had a reasonable basis for its coverage position and that Farmers' conduct related to its investigation and defense of the underlying claims does not support a finding of bad faith.  Because Farmer's conduct in this case does not rise to the level of bad faith, Plaintiffs are not entitled to punitive damages as a matter of law.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Farmers' Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages, filed May 7, 2002, **[Doc. No. 87]** and Defendant Farmers' Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages in Regards to the "R" Litigation, **[Doc. No. 90]** are hereby **GRANTED**.

Dated this 26th day of January, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorneys for Plaintiffs</u>:
    Maureen A. Sanders, Esq.
    F. Michael Hart, Esq.
    Philip B. Davis, Esq.

<u>Attorneys for Defendant</u>:
    William C. Madison, Esq.
    Shannon A. Parden, Esq.